Victoria Orze (#011413)
VOrze@dickinsonwright.com
Ian A. Nesteruk (#031075)
INesteruk@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Ste. 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for Defendant Bridgecrest*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Amy Faulk,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc., Trans Union, LLC, First Premier Bank and Bridgecrest f/k/a Drive Time Automotive Group, Inc.<br><br>　　　　　　Defendants. | Case No. CV-16-01907-SRB<br><br>**BRIDGECREST'S MOTION TO COMPEL ARBITRATION** |

Bridgecrest Acceptance Corporation, formerly known as DT Acceptance Corporation (referred to hereinafter as "Bridgecrest")[1] through undersigned counsel, hereby moves the Court to compel arbitration and stay these proceedings initiated by plaintiff Amy Faulk ("Plaintiff"). Plaintiff borrowed money from Bridgecrest to purchase a vehicle from DriveTime Car Sales Company, LLC, and in connection with that transaction signed an express agreement to arbitrate any disputes arising out of that relationship. The claims asserted by Plaintiff in the instant Complaint relate to that contract. Accordingly, pursuant to

---

[1] The putative Bridgecrest entity named as a Defendant does not exist. Drive Time Automotive Group, Inc. still bears that name, but it has no relationship to the allegations in Plaintiff's Complaint. Plaintiff's counsel has been advised of this fact previously.

-1-

1  the valid and enforceable arbitration agreement and the Federal Arbitration Act, 9 U.S.C. § 1
2  *et seq.* (the "FAA"), Plaintiff is required to arbitrate her dispute.
3        This Motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **FACTUAL BACKGROUND**

      On or about January 29, 2011, Plaintiff entered into a Retail Installment Contract and Security Agreement (the "Underlying Contract") with DriveTime Car Sales Company, LLC ("DriveTime") for the purchase of a vehicle. The Underlying Contract was assigned to DT Acceptance Corporation.[2] See Underlying Contract, attached hereto as **Exhibit A**. On that same date, Plaintiff signed an Arbitration Agreement with DriveTime, in which she expressly agreed that any dispute between her and DriveTime (including its parent, subsidiaries, affiliates, predecessors, successors, or assignees of the Underlying Contract) was subject to arbitration pursuant to the Federal Arbitration Act ("FAA"). See Arbitration Agreement, attached hereto at **Exhibit B**. Specifically, the Arbitration Agreement states: "[U]pon your [Plaintiff] or our [Bridgecrest's] election, all disputes between you and us will be resolved by **BINDING ARBITRATION**." Id. at p. 2 (emphasis in original).

      On June 15, 2016, Plaintiff filed the instant Complaint alleging that Bridgecrest violated the Fair Credit Reporting Act ("FCRA") with respect to the status of her automobile loan account. Plaintiff is suing Bridgecrest purely for actions that arise from the Underlying Contract and transaction governed by the Arbitration Agreement. Specifically, Plaintiff's alleged damages originate from Bridgecrest's repossession of Plaintiff's vehicle and the reporting of an outstanding balance on the Underlying Contract to credit reporting agencies. The Underlying Contract states: "**Default:** You [Plaintiff] will be in default if you do not make any payment in full when such payment is due. . . Additionally, we may take back (repossess) the Vehicle." Exhibit A at p. 3 (emphasis in original). There is a balance of over

---

[2] DT Acceptance Corporation is now known as Bridgecrest Acceptance Corporation.

$10,000.00 owed by Plaintiff to Bridgecrest pursuant to the Underlying Contract, which Bridgecrest intends to pursue by way of a counter-claim in the arbitration proceedings.

### III.    LEGAL ARGUMENT

#### A.    The FAA Requires the Enforcement of Arbitration Agreements.

In express terms the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). Specifically, section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, <u>shall be valid, irrevocable, and enforceable</u>, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Section 3 of the FAA states with respect to a stay of the proceedings:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties <u>stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement</u>, providing the applicant for the stay is not in default in proceeding with such arbitration.

FAA § 3 (emphasis added).

The trial court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.

2000). As explained below, because the Arbitration Agreement is valid and encompasses Plaintiff's claims, the FAA requires the court to enforce the Arbitration Agreement consistent with its terms. Id.

### B. Plaintiff's Claims are Subject to Mandatory Arbitration.

There is no dispute that the Arbitration Agreement is valid—it was signed by both parties concurrently with the Underlying Contract. See Exhibit B at p. 1; Exhibit A at p. 1; Complaint at ¶¶ 9, 13. Furthermore, Plaintiff's Complaint does not allege that the Underlying Contract is void or revocable. Rather, Plaintiff contends that she has suffered damages stemming from the Underlying Contract's enforceability and the resulting repossession of her vehicle. See Complaint at ¶ 13.

The Arbitration Agreement defines "claim" as "the broadest possible meaning," including claims of every kind and nature. This includes "initial claims, counterclaims, cross-claims, third-party claims, statutory claims, negligence and tort claims." Id. The Arbitration Agreement furthermore states:

> "Claim" includes any claim, dispute or controversy that arises from or relates to one or more of the following:
>
> (a) Advertisements, promotions or oral or written statements related to the Contract.
>
> (b) The sale of the vehicle and other goods or services sold and/or financed under the Contract and/or related to the vehicle.
>
> (c) The financing terms.
>
> (d) Your credit application.
>
> (e) The origination and servicing of the Contract.
>
> (f) The collection of amounts you owe us.
>
> (g) **Any repossession**, and/or replevin, of the vehicle.
>
> (h) Your personal information

Id. (emphasis added).

Plaintiff's claims alleging negligent and willful violation of the FCRA clearly fall within the comprehensive scope of the Arbitration Agreement. These are statutory claims expressly contemplated by the Arbitration Agreement. See Complaint at ¶¶ 21–32. Moreover, Plaintiff's claims are based on Bridgecrest's repossession of Plaintiff's vehicle. Id. at ¶ 13. The Arbitration Agreement unambiguously controls, and its broad language must be interpreted in favor of having the matter resolved by arbitration. "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (emphasis added).

The Arbitration Agreement grants both parties the ability to elect arbitration and that is exactly what Bridgecrest requests. See Exhibit B at p. 2. Plaintiff's claims for negligent and willful violation of the FCRA should not be litigated in light of the express agreement to arbitrate those claims. The Arbitration Agreement is both enforceable and applicable to all of Plaintiff's claims. Accordingly, the Court should order Plaintiff to arbitrate her claims against Bridgecrest, and stay these proceedings pending the outcome of arbitration.

## IV. CONCLUSION

For the foregoing reasons, Bridgecrest requests that the Court compel arbitration and stay these proceedings.

DATED this 9th day of August, 2016.

DICKINSON WRIGHT PLLC

By: /s/ Victoria L. Orze
    Victoria L. Orze
    1850 N. Central Ave., Ste. 1400
    Phoenix, Arizona 85004
    Attorneys for Bridgecrest

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of August, 2016, I electronically transmitted this Motion to the U.S. District Court Clerk's Office using the CM/ECF System for filing and to the following parties through their attorneys:

Trinette G. Kent
KENT LAW OFFICES
10645 N. Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
Attorneys for Plaintiff

Charity A. Olson
OLSON LAW GROUP
2723 S. State St., Suite 150
Ann Arbor, MI 48104
Attorneys for First Premier Bank

Jonathan Adam Dessaules
DESSAULES LAW GROUP
5353 N. 16th Street, Ste. 110
Phoenix, AZ 85016
Attorneys for Defendant
Experian Information Solutions, Inc.

Philip R. Wooten
PHILIP R. WOOTEN PC
3413 E. Equestrian Trail
Phoenix, AZ  85044-3403
Attorney for Defendant
Trans Union LLC


By:   /s/ Victoria L. Orze

PHOENIX 65716-4 309354v1

EXHIBIT A

119003167001

| SIMPLE INTEREST RETAIL INSTALLMENT CONTRACT | REPRINT DATE: 1/29/2011 | SALES DATE: 1/29/2011 |
|---|---|---|
| Buyer (and Co-Buyer) Name and Address<br>AMY HARDRICK FAULK | Dealer/Creditor Name and Address<br>DRIVETIME CARSALES COMPANY LLC<br>2205A PELHAM PKWY.<br>PELHAM, AL 35124-1314<br>205-909-1221<br>119003167001 | |

You, the Buyer (and Co-Buyer or Co-Signers, if any), may buy the motor vehicle described below (the "Vehicle") for cash or on credit. The cash price is shown below as "Cash Price". By signing below, you represent that you have been quoted only one cash price for the Vehicle. The credit price is shown below as "Total Sale Price". By signing this Contract, you choose to buy the Vehicle on credit as described in this Contract. "We", "us" and "our" refer to the Dealer shown above, and, after assignment of this Contract, to DT Acceptance Corporation.

| New/Used | Model Year and Make | Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2005 TOYOTA | CAMRY 4C | 4T1BE32K95U633750 | ☒ Personal ☐ Agricultural<br>☐ Business |

Trade-In: _____ Year _____ Make _____ Model _____

### FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid when you have made all scheduled payments | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 700.00 |
|---|---|---|---|---|
| 23.587 % | $ 10,982.23 | $ 15,082.26 | $ 26,064.49 | $ 26,764.49 |

**Payment Schedule**

| Number of Payments | Amount of Each Payment | When Payments Are Due |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| 60 | $ 427.29 | Monthly Beginning 03/02/2011 |
| 1 Final Payment | $ 427.09 | 03/02/2016 |

**Prepayment:** If you pay off your debt early, you will not have to pay a penalty.
**Late Payment:** You must pay a late charge on the part of each payment not made within 10 days after the date the payment is due. The charge is the greater of $10 or 5 percent of the late amount, not to exceed $100.
**Security Interest:** You are giving a security interest in the Vehicle being purchased.
Please read this Contract for additional information on security interests, non-payment, default, and our right to require repayment of your debt in full before the scheduled maturity date.
You agree to pay a finance charge on the Amount Financed at the Annual Percentage Rate shown above. This rate is referred to in this Contract as the Contract Rate.

### NOTICE TO THE BUYER

DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. YOU ALSO ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF ALL PAGES OF THIS CONTRACT AT THE TIME YOU SIGN IT.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

X [Retail Sales Contract]     X [Retail Sales Contract]
**Buyer Signs**     **Co-Buyer Signs**

X [Retail Sales Contract]
**Co-Signer Signs**
By signing below, the Dealer/Creditor accepts this Contract
X DriveTime    By: _____    Title: _____
**Dealer**

AALRC (09/27/2010)     Page 1 of 4

119003167001

| INSURANCE | ITEMIZATION OF AMOUNT FINANCED | |
|---|---|---|
| YOU MAY OBTAIN INSURANCE ON THE VEHICLE FROM A PERSON OF YOUR CHOICE THAT IS AUTHORIZED TO SELL SUCH INSURANCE AND IS ACCEPTABLE TO US. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED. | 1. Cash Price (Including sales tax of $ 514.72, any accessories, their installation, and taxes) | $ 15,765.76 (1) |
| | 2. Down Payment | |
| | Cash Down Payment | $ 700.00 |
| | Trade-In Allowance | $ .00 |
| | Trade-In Payoff | $ .00 |
| | Payoff To: _____ | |
| | Net Trade-In (Description Above) | $ .00 |
| | **Total Down Payment** | $ 700.00 (2) |
| **NOTICES REQUIRED BY FEDERAL LAW** | 3. Unpaid Balance of Cash Price (1 minus 2) | $ 15,065.76 (3) |
| Used motor vehicle Buyers Guide. If you are buying a used vehicle with this Contract, federal regulations may require a special Buyers Guide to be displayed on the window of the Vehicle. **THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.** | 4. Amounts Paid to Others on Your Behalf | |
| | (a) To Public Officials | |
| | (i) License, title & registration fees | $ 16.50 |
| | (ii) Filing fees | $ N/A |
| | (iii) Taxes (not in Cash Price above) | $ N/A |
| | *(b) Other Charges: | |
| | *To DriveTime for Dealer Services Fee | $ .00 |
| | *To N/A for N/A | $ N/A |
| | Total Amounts Paid to Others on Your Behalf (a plus b) | $ 16.50 (4) |
| NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. | *Dealer may retain or receive a portion of these amounts | |
| | 5. Balance of Cash Price and Other Charges (3 plus 4) | $ 15,082.26 (5) |
| | 6. Amount Financed | $ 15,082.26 (6) |

**Payments:** You jointly and severally agree to make all payments when they are due according to the Payment Schedule shown in the Federal Truth in Lending Disclosure Box on the first page of this Contract. You may prepay this Contract at any time without penalty. Interest will accrue on any amounts remaining unpaid after maturity at the Annual Percentage Rate disclosed in the Federal Truth in Lending Disclosure Box on the first page of this Contract.

**Security Interest:** To secure your obligations, you give us a security interest in the Vehicle, all accessions, attachments, accessories and equipment placed in or on the Vehicle and all proceeds of the Vehicle. You also give us a security interest in all money or goods received for the Vehicle and all insurance premiums, service and other contracts we finance. The security interest secures payment of all amounts you owe in this Contract and performance of your other agreements in this Contract. You will not grant anyone else a security interest, lien or any other claim to the Vehicle without our express prior written consent. We reserve our right to setoff (we can apply funds we owe you to what you owe us under the Contract) to the extent not prohibited by applicable law.

**Finance Charges:** This is a simple interest Contract. The finance charges you pay will depend on how you make your payments. Your actual finance charges may be more than the disclosed Finance Charges if you make your payments late or in less than the scheduled amount. We will apply payments to late charges, finance charges and to the unpaid balance of the cash price and other charges in any manner we choose unless we are required by law to apply payments in a particular order. Finance charges are earned by applying the Contract Rate to the unpaid Balance of Cash Price and Other Charges shown above for the time such balance is owed, subject to the finance charge free period, if any, described on the first page of this Contract. The Dealer may receive a portion of the Finance Charges.

**Use of Vehicle:** You must take care of the Vehicle. You must obey all laws in using it. You must keep the Vehicle in your possession at the Buyer's address shown above, unless we approve another address in writing. You may not sell or rent the Vehicle. You must keep it free from the claims of others. You will not take it out of the United States without our prior written consent. You will immediately tell us of any change in your address or the address where the Vehicle is regularly kept. You agree not to add to the Vehicle any accessories, equipment or any other property in which any other person has an ownership or security interest.

**Warranties Seller Disclaims:** Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Contract, **the Seller makes no warranties, express or implied, on the Vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.** This provision does not affect any warranties covering the vehicle or parts thereof that the Vehicle manufacturer or parts supplier may provide. Only the manufacturer or supplier shall be liable for performance under their warranties.

**Vehicle Insurance:** You must insure yourself and us for the term of this Contract against loss of or damage to the Vehicle with a policy in the Buyer's name acceptable to us. You will maintain comprehensive fire, theft and collision coverage, insuring the Vehicle for at least the Vehicle's fair market value. You will name us as loss payee and provide whatever evidence of insurance we request. We must approve the type and amount of insurance. If you do not maintain the required insurance you will be in

119003167001

default. We may buy substantially similar coverage at your expense. We may add the cost of such insurance to your obligations due under this Contract and/or collect those costs separately from you. You agree to pay such costs either upon our demand or in installments, subject to a finance charge at the Contract Rate, if we elect to apply a finance charge. The insurance we buy may, at our option, protect only our interest, or both your interest and ours. **Insurance we buy may cost substantially more than insurance you buy.** We will cancel the insurance we buy if you give us satisfactory proof of insurance reasonably acceptable to us. **Whether or not the Vehicle is insured, you will pay us all you owe under this Contract even if the Vehicle is lost, damaged beyond repair, or destroyed.**

You are not required as a condition of financing the purchase of the Vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. Your choice of insurance providers will not affect our decision to sell you the Vehicle or extend credit to you.

**Late Charges and Returned Checks:** The charge for late payments is shown in the Federal Truth in Lending Disclosure Box on the first page of this Contract. You must also pay any cost we pay to collect any late payment, as allowed by law. When we accept a late payment or late charge, that does not excuse your default or mean that you can keep making payments late. You agree to pay a charge for any check you give us that is unpaid for any reason equal to $30. You acknowledge that **THERE IS NO GRACE PERIOD** for your payments; you must make your payments ON or BEFORE their due dates.

**Default:** You will be in default if you do not make any payment in full when such payment is due. You will be in default if you gave false or misleading information on your application relating to this Contract. You will be in default if you file a bankruptcy petition or if one is filed against you. You will be in default if the Vehicle is lost, **damaged beyond repair, or destroyed.** You will be in default if you do not keep any other agreement in this Contract.

If you are in default, we may require you to pay at once the unpaid Balance of Cash Price and Other Charges, the earned and unpaid part of the Finance Charge and all other amounts due under this Contract (the entire unpaid balance). If as a consequence of your default we require that you pay the entire unpaid balance, we will charge you interest at the Contract rate or, if the Contract rate is zero, at the highest rate authorized by applicable law on the entire unpaid balance from the date of our notice to you demanding payment of the entire unpaid balance. Additionally, we may take back (repossess) the Vehicle. We may also take items of personal property found in the Vehicle when we take back the Vehicle and hold them for you. If you do not claim them within the time required by law, we will dispose of them in a commercially reasonable manner. We may cancel any insurance or other products or services you have purchased in this Contract and apply any refunds we receive to the amount you owe. You agree to pay any reasonable attorneys' fees not to exceed 15% of the principal and interest owing under this Contract, after default and referral of this Contract to an attorney for collection who is not our salaried employee and other collection costs we incur at any time in collecting amounts you owe under this Contract, including during any bankruptcy proceedings or upon any appeal.

If we take back the Vehicle, we will sell it unless you exercise any right to cure or redeem the Vehicle that you may have under state law. The sale proceeds, less amounts we pay to take back the Vehicle, hold it, prepare it for sale, and sell it, and less our attorneys' fees and legal costs if permitted by law, will be used to pay the amount you owe on this Contract. Any money left will be paid to you unless the law requires that we pay it to someone else. If the sale proceeds are not enough to pay off this Contract and costs, and we have complied with the applicable notice requirements, you will be obligated to pay us what is still owed (the deficiency) if the original Cash Price shown in the Itemization of Amount Financed in this Contract exceeded $1,000. If we repossess the Vehicle, you may be required to pay our actual costs of taking and storing the Vehicle, to the extent such charges are not prohibited by law.

We can, without notice, delay enforcing our rights or exercise only part of them without losing them, waive a right we have without waiving it for subsequent opportunities to exercise that right, and waive a right we have as to one Buyer without waiving it as to the other(s). You also expressly waive demand for payment, notice of non-payment, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate and notice of acceleration.

**Assignment:** You may not assign your rights in the Vehicle or under this Contract without our permission. We may sell or assign our rights in this Contract without your permission. We may sell or assign this Contract for an amount that is more than or less than the Balance of Cash Price and Other Charges.

**General:** Any change in this Contract must be written and signed by you and us. The law of the state of the Dealer's place of business shown in this Contract applies to this Contract. If that law does not allow all the agreements in this Contract, the ones that are not allowed will be void. The rest of this Contract will still be good.

**After-Sale Review and Verification Process:** The Vehicle is sold to you subject to an after-sale review and verification of the information you have provided to us. You have agreed to cooperate with the after-sale review and verification process. If we cannot verify the information you have provided to us, or any information you provided to us is false, there is a material adverse change in such information during the review process, or you do not cooperate in the verification and review process, you will be in default under the terms of the Contract.

**Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the Vehicle to you if it is beyond our control, not our fault or we are not negligent.**

119003167001

**References/Credit Reports:** We may contact your employer or your references to verify the information you provided to us in your application or in connection with this Contract. We may also contact your employer or your references if we are unable to locate you. The servicer of this Contract may also do so. Federal or state law may limit these contacts. You also consent to us or a servicer, obtaining a credit report(s) in connection with the servicing of the Contract.

**Trade-In Representation and Warranty:** You represent and warrant that the trade-in vehicle described in the Buyers Order/Purchase Order, if any, is not a titled salvage, flood, taxi, police or rebuilt vehicle; the odometer has not been replaced, repaired, changed or rolled back; all emission control equipment is on the trade-in and is working; you will provide to us the Certificate of Title (or documents that allow us to obtain it), and, you have the right to sell the trade-in.

**Odometer (mileage):** Each your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither of us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the Vehicle unless otherwise disclosed to you on the AutoCheck Vehicle History Report. You acknowledge that We have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and You accept the Vehicle without representation or warranty from us. You further acknowledge that You had the opportunity to have the airbag(s) checked by someone of your choice prior to the completion of the sale.

**Liability Insurance Required:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Contract.

**Record Retention:** You agree that we may maintain documents and records related to the Vehicle and the Contract electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding relating to the Vehicle.

**Communications With You:** You agree that we may contact you in writing, by e-mail, or using prerecorded/ artificial voice messages, text messages, and automatic dialing systems, to the extent not prohibited by law. You also agree that we may contact you at any address or telephone number you provide us, even if the telephone number is a mobile phone number and you are charged for it by your mobile phone service provider. The content of electronic communications may include legal notices required by law, other notices, contract documents, confirmation of payments, and DriveTime information and marketing materials. If state or federal law requires us to give you notice or information that does not contain confidential private information (for example, notices describing our privacy policy) you agree where permitted by law, we may post it on the DriveTime web site and you have received the information or notice that has been posted. You understand this means you need to check our web site www.drivetime.com occasionally to confirm if anything has been posted. With respect to email communication, although unlikely, emails are not protected and may be intercepted. We will assist one another if any problems arise. If you do not want us to contact you by email, simply notify us by calling the following toll-free number 800-967-8526 or visit http://www.drivetime.com/optout/default.aspx. Note that we may monitor or record for customer satisfaction and quality purposes our dealings with you, including telephone conversations. You agree that we, or any affiliate servicing this Contract on our behalf, may do so.

**30 Day Contract Rate Buy Down:** If you are current on your payments or bring the contract current, you are not in default of this Contract, you have not given us any insufficient funds checks, and you are not in default of this Contract, you have the option of making an additional payment on or before thirty (30) days after your execution of this Contract. A portion of this payment will be applied to any accrued and unpaid finance charges at the time of the payment and the remainder will be applied to reduce your principal balance. Depending upon the amount of the additional payment, the Contract rate under your Contract also will be reduced. The additional payment is not in lieu of any other payment shown in your payment schedule including irregular payments. This additional payment is completely optional; you are not required to make this payment. The following chart shows how much you can reduce your Contract rate depending upon the amount of this additional payment. At the time of the additional payment, we can change the amount of your regular payments and/or your term. We will discuss your options with you at that time.

| With an additional payment of $ | 50.00 | you will receive a Contract rate of | 23.471 |
|---|---|---|---|
| With an additional payment of $ | 300.00 | you will receive a Contract rate of | 22.876 |
| With an additional payment of $ | 550.00 | you will receive a Contract rate of | 22.258 |
| With an additional payment of $ | 800.00 | you will receive a Contract rate of | 21.613 |
| With an additional payment of $ | 1,050.00 | you will receive a Contract rate of | 20.942 |
| With an additional payment of $ | 1,300.00 | you will receive a Contract rate of | 20.242 |
| With an additional payment of $ | 1,550.00 | you will receive a Contract rate of | 19.511 |
| With an additional payment of $ | 1,800.00 | you will receive a Contract rate of | 18.746 |

**Assignment of Dealer:** For value received, Dealer hereby transfers and assigns to DT ACCEPTANCE CORPORATION ("Assignee") all of its right, title, and interest in this Contract and the Vehicle. This transfer and assignment is made pursuant to and is subject to any Agreement between Dealer and Assignee by which Assignee has agreed to accept the transfer and assignment of contracts from Dealer.

AALRC (09/27/2010)                                                                                                     Page 4 of 4

EXHIBIT B



119003167001

# ARBITRATION AGREEMENT

"Us/We/Our" means: DriveTime, its parent, and all subsidiaries, affiliates, predecessors and successors (including any assignee of the contract), and all of their officers, directors and employees. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle. "Us/We/Our" also means any third party named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement.

"You/Your" means: AMY HARDRICK FAULK

"Contract" means: Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement), Number: 119003167001     Dated: 1/29/2011

"Contract" includes any prior agreement that you have had with us.

"Agreement" means this Arbitration Agreement

"Including" and "includes" mean "including but not limited to".

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute or controversy between you and us arising from or related to one or more of the following:

(a) The Contract.
(b) The vehicle or the sale of the vehicle.
(c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
(d) The relationships resulting from the Contract.
(e) The validity, enforceability or scope of this Arbitration Agreement and the Contract.
(f) The rescission or termination of the Contract.

"Claim" has the broadest possible meaning. It includes claims of every kind and nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, negligence and tort claims.

"Claim" includes any claim, dispute or controversy that arises from or relates to one or more of the following:

(a) Advertisements, promotions or oral or written statements related to the Contract.
(b) The sale of the vehicle and other goods or services sold and/or financed under the Contract and/or related to the vehicle.
(c) The financing terms.
(d) Your credit application.
(e) The origination and servicing of the Contract.
(f) The collection of amounts you owe us.
(g) Any repossession, and/or replevin, of the vehicle.
(h) Your personal information

Even if you or we elect to litigate a Claim in court, you or we may elect to arbitrate any Claim by a new party or any new Claims in that lawsuit. Nothing in that litigation waives any right in this Agreement.

This Agreement applies to all Claims, even Claims that existed before you sign it. This Agreement is effective when you sign it. We will not elect to arbitrate an individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve the right to elect arbitration.

Nothing in this Agreement prevents you or us using or advancing any Claims, defenses or offsets in bankruptcy, repossession, replevin, judicial foreclosure or any other prejudgment or provisional remedy relating to any collateral or security for debts owed by either party to the other under the Contract.

Selection of Arbitration Administrator: Any Claim shall be resolved, on your election or ours, by arbitration under this Agreement. The applicable and then-current rules of the arbitration administrator will also apply.


100150



D230V04 (06/15/05)                                                                                                                   Page 1 of 3

119003167001

You may select the administrator from the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. You will have 20 (twenty) days to select one of these administrators. If you do not choose an administrator within the 20-day period, we will do so. If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose another from the list below. If you do not select a new administrator within that period, we will do so.

Location of Hearing. Any arbitration hearing that you attend shall take place in the federal judicial district of your residence.

No Class Actions. You waive the right or authority for a Claim to be arbitrated on a class action or class-wide basis or to act in a private attorney general or similar capacity. Arbitration can only decide your or our Claims. Neither of us may consolidate claims of anyone else.

Fees and Expenses. If you ask in writing, we will pay all administrator fees up to $2,500 for Claims you assert. We will pay that amount after you have paid an amount equivalent to the fee, if any, for filing such Claims in state or federal court (whichever is less) in the judicial district in which you live. If you have already paid a court filing fee for asserting the Claims, you will not have to pay that amount again.

We will consider your request to pay all or part of any administrator fees over $2,500 ("additional fees"). To the extent that we do not approve your request, if the arbitrator issues an award to you we will still pay you for additional fees you must pay the administrator as follows:

(1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.
(2) In the case of other additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.

However, if the law requires us to pay you any greater sums, that law will control. If the arbitrator makes an award to us, you are not required to pay us any fees we must pay the administrator. An arbitration administrator may waive or reduce its fees for financial hardship. Each party shall pay its own attorneys', experts' and witness fees, regardless of who prevails in the arbitration, unless the law and/or this Agreement gives a party the right to recover any of those fees from the other party.

Applicable Law, Award of Arbitrator and Right to Appeal. The Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply Federal or any state rules of civil procedure or evidence. Judgment upon the arbitrator's award may be entered in any court having jurisdiction. Otherwise, the award shall be kept confidential. The arbitrator's decision will be final and binding, except for any right of appeal under the FAA. If, however, an award exceeds $50,000, any party can appeal it. The appeal shall be to a three-arbitrator panel of the same administrator. The panel shall reconsider any aspect of the initial award requested by the appealing party. The appealing party will pay the costs of appeal, regardless of the appeals outcome.

Miscellaneous. This Agreement survives payment of all you owe under the Contract. It also survives your bankruptcy and any sale by us of your Contract. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement or the Contract shall be enforceable despite such invalidity. If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs.

| NOTICE OF ARBITRATION AGREEMENT |
|---|
| This Agreement provides that upon your or our election, all disputes between you and us will be resolved by **BINDING ARBITRATION**. |
| If you or we elect arbitration, you will be **GIVING UP YOUR RIGHT TO GO TO COURT** to assert or defend your rights under the Contract (except for individual claims that may be taken to small claims court). |
| Your rights will be determined by a **NEUTRAL ARBITRATOR** and **NOT** by a **JUDGE OR JURY. YOU WILL BE WAIVING YOUR RIGHTS TO A TRIAL BY JURY.** |



D230AV02 (12/01/04)

Page 2

119003167001

You are entitled to a **FAIR HEARING**, but arbitration procedures are simpler and more limited than rules that apply in court. **YOU WILL NOT HAVE THE RIGHT TO BE A MEMBER OR REPRESENTATIVE IN A CLASS ACTION.**

Arbitrator decisions are enforceable as any court order and are subject to **VERY LIMITED COURT REVIEW.**

**THE ARBITRATION ADMINISTRATOR'S FEES MAY BE MORE THAN THE FEES CHARGED BY A COURT. READ THIS AGREEMENT CAREFULLY BEFORE YOU SIGN.**

**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE ARBITRATION AGREEMENT WHICH MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS ARBITRATION AGREEMENT.**

_____    _____
Customer Signature           Customer Signature

DriveTime
By: _____    Dated: 1/29/11
Authorized Employee

**ARBITRATION ADMINISTRATORS**

If you have a question about the administrators mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suite 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsADR.com
(800) 352-5267

D230BV03 (12/01/04)